ORAL ARGUMENT NOT YET SCHEDULED

Case Nos. 11-1355, 11-1356, 11-1403, and 11-1404

UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT

VERIZON,
Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION,
Appellee.

––––––––––––––––––

INDEPENDENT TELEPHONE AND TELECOMMUNICATIONS
PROVIDERS *ET AL.*,
Intervenors.

On Appeal of an Order of
The Federal Communications Commission

––––––––––––––––––

FINAL INITIAL SEPARATE BRIEF OF APPELLANTS/PETITIONERS
METROPCS COMMUNICATIONS, INC. *ET AL.*

––––––––––––––––––

Carl W. Northrop
Michael Lazarus
Andrew Morentz
TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC
875 15th Street, NW, Suite 750
Washington, DC 20005
(202) 789-3120

Stephen B. Kinnaird
*Counsel of Record*
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1842
stephenkinnaird@paulhastings.com
(continued on inside cover)

Mark Stachiw
General Counsel, Secretary,
 and Vice Chairman
METROPCS COMMUNICATIONS, INC.
2250 Lakeside Boulevard
Richardson, TX 75082
Telephone: (214) 570-5800

Attorneys for Appellants/Petitioners
METROPCS COMMUNICATIONS, INC.;
METROPCS 700 MHZ, LLC;
METROPCS AWS, LLC;
METROPCS CALIFORNIA, LLC;
METROPCS FLORIDA, LLC;
METROPCS GEORGIA, LLC;
METROPCS MASSACHUSETTS, LLC;
METROPCS MICHIGAN, INC.;
METROPCS NETWORKS CALIFORNIA,
LLC;
METROPCS NETWORKS FLORIDA
LLC;
METROPCS TEXAS, LLC; AND
METROPCS WIRELESS, INC.

January 18, 2013

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

The undersigned attorney of record, in accordance with D.C. Cir. R. 28(a)(1), hereby certifies as follows:

## I.     PARTIES AND AMICI

The principal parties in these consolidated cases are Appellants-Petitioners MetroPCS Communications, Inc. and its FCC-licensed affiliates (MetroPCS 700 MHz, LLC; MetroPCS AWS, LLC; MetroPCS California, LLC; MetroPCS Florida, LLC; MetroPCS Georgia, LLC; MetroPCS Massachusetts, LLC; MetroPCS Michigan, Inc.; MetroPCS Networks California, LLC; MetroPCS Networks Florida LLC; MetroPCS Texas, LLC; and MetroPCS Wireless, Inc.); Appellant-Petitioner Verizon; Petitioner Free Press; Appellee-Respondent Federal Communications Commission; and Respondent United States of America. ITTA – The Independent Telephone and Telecommunications Alliance, the National Association of Regulatory Utility Commissioners, the National Association of State Utility Consumer Advocates, Public Knowledge, Vonage Holdings Corporation, and the Open Internet Coalition have intervened in support of Appellee-Respondent. CTIA – The Wireless Association has intervened in support of Appellants-Petitioners. The Commonwealth of Virginia has notified the Court of its intent to file an *amicus curiae* brief in support of Appellants-Petitioners.

- i -

The persons who appeared before the agency in the proceedings below are:

100 Black Men of America *et al.*
2Wire, Inc.
4G Americas, LLC
4Info, Inc.
ACT 1 Group *et al.*
Adam Candeub and Daniel John McCartney
ADTRAN, Inc.
Adventia Innovative Systems
African American Chamber of Commerce - Milwaukee
African Methodist Episcopal Church
Aircell LLC
Akamai Technologies, Inc.
Alabama State Conference of the NAACP
Alarm Industry Communications Committee
Alcatel-Lucent
Allbritton Communications Company
Alliance for Digital Equality
Alliance for Telecommunications Industry Solutions
Amazon.com
American Arab Chamber of Commerce
American Association of Independent Music
American Association of People with Disabilities
American Business Media
American Cable Association
American Center for Law and Justice
American Civil Rights Union
American Consumer Institute CCR
American Council of the Blind
American Federation of Television & Radio Artists, Directors Guild of
    America, International Alliance of Theatrical Stage Employees, Screen
    Actors Guild
American Homeowners Grassroots Alliance
American Indian Chamber of Commerce of Wisconsin
American Legislative Exchange Council
American Library Association, Association of Research Libraries,
    EDUCAUSE

Americans for Prosperity
Americans for Tax Reform and Media Freedom Project
Americans for Tax Reform Digital Liberty Project
Americans for Technology Leadership
Annie McGrady
Anti-Defamation League
AOL Inc.
Arts+Labs
Asian American Justice Center
Assemblywoman Debbie Smith
Association for Competitive Technology
Association of Research Libraries
Association of Research Libraries, EDUCAUSE, Internet2, NYSERNet, and
    ACUTA
AT&T Inc.
Automation Alley
Ball State University Center for Information and Communications Science
Barbara A. Cherry
Barbara S. Esbin
Big Brothers Big Sisters of Will and Grundy Counties
Black Leadership Forum, Inc.
Bret Swanson, President, Entropy Economics LLC
Bright House Networks, LLC
Broadband Institute of California and Broadband Regulatory Clinic
Broadcast Music, Inc.
BT Americas Inc.
Cablevision Systems Corporation
California Consumers for Net Neutrality
California Public Utilities Commission
Camiant, Inc.
Carbon Disclosure Project
Career Link Inc.
Catherine Sandoval and Broadband Institute of California
CDMA Development Group, Inc.
Center for Democracy & Technology
Center for Individual Freedom
Center for Media Justice, Consumers Union, Media Access Project, and
    New America

Center for Rural Strategies
Center for Social Media
Central Washington Hispanic Chamber of Commerce
CenturyLink
Chairman Kenneth D. Koehler, McHenry County Board
Chamber of Commerce of St. Joseph County
Charter Communications
Christopher S. Yoo
Christopher Sacca
Cincinnati Bell Wireless LLC
Cisco Systems, Inc.
City of Philadelphia
Clearwire Corporation
Coalition of Minority Chambers
ColorOfChange.org
Comcast Corporation
Communications Workers of America
Communications Workers of America—District 2 in West Virginia
Communications Workers of America—Local 3806
Communications Workers of America—Local 4900
Competitive Enterprise Institute
COMPTEL
CompTIA
Computer & Communications Industry Association
Computer Communications Industry Association, Consumer Electronics
    Association
Computing Technology Industry Association
CONNECT
Connecticut Association for United Spanish Action, Inc.
Connecticut Technology Council
Consumer Policy Solutions
Corning Incorporated
Corporation for National Research Initiatives
Council of Baptist Pastors of Detroit & Vicinity, Inc.
Covad Communications Company
Cox Communications, Inc.
Craig Settles (Successful.com)
CREDO Action

Cricket Communications, Inc.
CTIA - The Wireless Association
CWA Indiana State Council
CWA Local 4900
Damian Kulash
Daniel Lyons
Data Foundry, Inc.
David Clark, William Lehr, and Steve Bauer
David D.F. Uran, Mayor, City of Crown Point, Indiana
Deborah Turner
Debra Brown
Derek Leebaert
Dickinson Area Partnership
Digital Education Coalition
Digital Entrepreneurs
Digital Society
DISH Network L.L.C.
Distributed Computing Industry Association
Downtown Springfield, Inc.
EarthLink, Inc.
Eastern Kentucky's Youth Association for the Arts, Inc.
Economic Development Council of Livingston County
Eight Mile Boulevard Association
El Centro
Electronic Frontier Foundation
Elgin Area Chamber
Elizabeth A. Dooley, Ed. D.
Entertainment Software Association
Ericsson Inc.
Erie Neighborhood House
Fiber-to-the-Home Council
Free Press
Frontier Communications
Future of Music Coalition
Future of Privacy Forum
G. Baeslack
General Communication, Inc.
Genesee Regional Chamber of Commerce

George Ou
Georgetown/Scott County Kentucky Chamber of Commerce
Georgia Minority Supplier Development Council
Global Crossing North America, Inc.
Global Intellectual Property Center
Google Inc.
Great River Economic Development Foundation
Greater Kokomo Economic Development Alliance
GSM Association
GVNW Consulting, Inc.
Hamilton County Alliance
Hance Haney
Hannah Miller
Harris Corporation
HB Clark
Hispanic Leadership Fund
Hispanic Technology and Telecommunications Partnership
Hmong/American Friendship Association, Inc.
Hughes Network Systems, LLC
Illinois Hispanic Chamber of Commerce
Independent Creator Organizations
Independent Film & Television Alliance
Independent Telephone & Telecommunications Alliance
Indiana Secretary of State
Indianapolis Urban League
Information and Communications Manufacturers and Service Providers
Information Technology and Innovation Foundation
Information Technology Industry Council
Institute for Emerging Leaders, Inc.
Institute for Liberty
Institute for Policy Innovation
Institute for Policy Integrity
Intellectual Property and Communications Law Program at Michigan State
    University College of Law
International Documentary Association, Film Independent, and others
Internet Freedom Coalition
Internet Innovation Alliance
Internet Society

Intrado Inc. and Intrado Communications Inc.
Ionary Consulting
Jared Morris
Jeanne K. Magill, Pabst Farms Development Inc.
Joe Armstrong, Tennessee State Representative
Joe Homnick
John Palfrey
John Staurulakis, Inc.
Johnson County Board of Commissioners
Joint Center for Political and Economic Studies
Joliet Region Chamber of Commerce & Industry
Kankakee County Farm Bureau
Karen Kerrigan, President & CEO, Small Business & Entrepreneurship
    Council
Karen Maples
Kentucky Commission on the Deaf and Hard of Hearing
Labor Council for Latin American Advancement
Lake Superior Community Partnership
Lakewood Chamber of Commerce
Latin American Chamber of Commerce of Charlotte
Latin Chamber of Commerce of Nevada
Latinos for Internet Freedom and Media Action Grassroots Network
Latinos in Information Sciences & Technology Association
Laurence Brett Glass, d/b/a LARIAT
Lawerence E. Denney, Speaker of the House, State of Idaho
Lawrence County Economic Growth Council
Lawrence Morrow
Leadership East Kentucky
League of United Latin American Citizens
Leap Wireless International, Inc. and Cricket Communications, Inc.
Level 3 Communications LLC
Links Technology Solutions, Inc.
Lisa Marie Hanlon, TelTech Communications LLC
M3X Media, Inc.
Mabuhay Alliance
Maneesh Pangasa
Mary-Anne Wolf
Matthew J. Cybulski

Mayor Brad Stephens

Mayor George Pabey, City of East Chicago, Indiana

Mayor Leon Rockingham, Jr.

Mayor Rudolph Clay, Gary, Indiana

McAllen Solutions

Media Action Grassroots Network, ColorOfChange.org, Presente.org,
    Applied Research Center, Afro-Netizen, National Association of
    Hispanic Journalists, Native Public Media, and Rural Broadband Policy
    Group

MegaPath, Inc. and Covad Communications Company

Messaging Anti-Abuse Working Group

MetroPCS Communications, Inc.

Michele Hodges, Troy Chamber

Microsoft Corp.

Mid-Atlantic Community Papers Association, on behalf of Association of
    Free Community Papers, Community Papers of Michigan, Free
    Community Papers of New York, Community Papers of Florida,
    Midwest Free Community Papers, Community Papers of Ohio and West
    Virginia, Southeastern Advertising Publishers Association, Wisconsin
    Community Papers

Mike Riley

Ministerial Alliance Against the Digital Divide

Mississippi Center for Education Innovation

Mississippi Center for Justice

MLB Advanced Media, L.P.

Mobile Future

Mobile Internet Content Coalition

Motion Picture Association of America, Inc.

Motorola, Inc.

Nacional Records

Nate Zolman

National Association for the Advancement of Colored People

National Association of Manufacturers

National Association of Realtors

National Association of State Utility Consumer Advocates

National Association of Telecommunications Office & Advisors

National Black Chamber of Commerce

National Cable & Telecommunications Association

National Coalition on Black Civic Participation
National Council of La Raza
National Emergency Number Association
National Exchange Carrier Association, Inc.
National Exchange Carrier Association, Inc., National Telecommunications
    Cooperative Association, Organization for the Promotion &
    Advancement of Small Telecommunication Companies, Eastern Rural
    Telecom Association, Western Telecommunications Alliance
National Farmers Union
National Foundation for Women Legislators High Speed Internet Caucus
National Hispanic Caucus of State Legislators
National Hispanic Media Coalition
National Medical Association
National Organization of Black Elected Legislative Women *et al.*
National Organizations
National Rural Health Association
National Spinal Cord Injury Association
National Taxpayers Union
National Telecommunications Cooperative Association
National Urban League
Netflix, Inc.
Network 2010
New America Foundation
New Jersey Rate Counsel
New York State Office of Chief Information Officer/Office for Technology
    (CIO/OFT)
Nicholas Bramble, Information Society Project at Yale Law School
Nickolaus E. Leggett
Nippon Telegraph and Telephone Corporation
Nokia Siemens Networks US LLC
Northern Nevada Black Cultural Awareness Society
Office of the Attorney General of Virginia
Office of the Mayor, City of Peru
Older Adults Technology Services, Inc.
Open Internet Coalition
Open Media and Information Companies Initiative
Operation Action U.P.
Oregon State Grange

Organization for the Promotion & Advancement of Small
Telecommunication Companies

PAETEC Holding Corp.

Patricia Dye

Performing Arts Alliance

Phil Kerpen, Vice President, Americans for Prosperity

Property Rights Alliance

Public Interest Advocates

Public Interest Commenters

QUALCOMM Incorporated

Qwest Communications International Inc.

R. L. Barnes

Rainbow PUSH Coalition

Recording Industry Association of America

Red Hat, Inc.

Rev. W.L.T. Littleton

Richmond Chamber of Commerce

RNK Communications

Robert K. McEwen d/b/a PowerView Systems

Robert Steele, Cook County Commissioner

Rural Cellular Association

Safe Internet Alliance

Saint Xavier University

Sandvine Inc.

Satellite Broadband Commenters

SavetheInternet.com

Scott Cleland

Scott Jordan

Sean Kraft

Sean Sowell

Seth Johnson

Shelby County Development Corporation

Skype Communications S.A.R.L.

Sling Media, Inc.

Smartcomm, LLC

Smithville Telephone Company

Software & Information Industry Association

Songwriters Guild of America

Sony Electronics Inc.
Southern Company Services, Inc.
Southern Wayne County Regional Chamber of Commerce
Sprint Nextel Corp.
St. Louis Society for the Blind and Visually Impaired
Stephen Beck
Steve Forte, Chief Strategy Officer, Telerik
stic.man of Dead Prez
SureWest Communications
Susan Jacobi
TDS Telecommunications Corp.
Tech Council of Maryland
TechAmerica
Telecom Italia, S.P.A.
Telecom Manufacturer Coalition
Telecommunications Industry Association
TeleDimensions, Inc.
Telefonica S.A.
Telephone Association of Maine
Texas Office of Public Utility Counsel
Texas Public Policy Foundation
Texas Statewide Telephone Cooperative, Inc.
The Ad Hoc Telecommunications Users Committee
The Berroteran Group
The Disability Network
The Free State Foundation
The Greater Centralia Chamber of Commerce & Tourism Office
The Greenlining Institute
The Heartland Institute
The Nebraska Rural Independent Companies
The Senior Alliance
Thomas C. Poorman, President, Zanesville-Muskingum County Chamber of
    Commerce
Thomas D. Sydnor II, Senior Fellow and Director, Center for the Study of
    Digital Property at the Progress & Freedom Foundation
Thomas Richard Reinsel, Executive in Residence, Sewickley Oak Capital
Thomas W. Hazlett
Tim Wu

Time Warner Cable Inc.
T-Mobile USA, Inc.
tw telecom inc.
U.S. Chamber of Commerce
Union Square Ventures
United Service Organizations of Illinois
United States Hispanic Chamber of Commerce
United States Telecom Association
UNITY: Journalists of Color, Inc.
Upper Peninsula Economic Development Alliance
Upper Peninsula Health Plan
Urban League of Metropolitan Seattle
Various Advocates for the Open Internet
Verizon and Verizon Wireless
Via Christi Health System eCare-ICU
Village of Maywood
Vincent Watts of the Greater Stark County Urban League
Voice on the Net Coalition
Vonage Holdings Corp.
Voto Latino
Washington State Grange
Wayne Brough, James Gattuso, Hance Haney, Ryan Radia, and James
    Lakely
Windstream Communications, Inc.
Winston-Salem Urban League
Wireless Communications Association International, Inc.
Wireless Internet Service Providers Association
World Institute on Disability *et al.*
Writers Guild of America, East AFL-CIO
Writers Guild of America, West, Inc.
XO Communications, LLC
YWCA of St. Joseph County

## II.    <u>RULING UNDER REVIEW</u>

Petitioners seek review of the following FCC decision: *In the Matter Of*

*Preserving The Open Internet*, 25 F.C.C.R. 17905 (Dec. 21, 2010).

## III.   **RELATED CASES**

MetroPCS is not aware of any related cases other than those consolidated before this Court.  MetroPCS disagrees with Verizon's designation of *Cellco Partnership d/b/a Verizon Wireless v. FCC*, Nos. 11-1135 & 11-1136 (D.C. Cir.), as a related case.  *See* Verizon/MetroPCS Joint Br., Certificate of Parties, Rulings, and Related Cases, at xii-xiii.   Although the Commission has invoked some of the same bases of Title III jurisdiction and Verizon similarly has challenged that order as running afoul of the common-carrier prohibition applicable to private mobile radio service, the similarity ends there.  That case involves a different order, different regulations, certain different bases of authority, and completely different subject matter (data roaming agreements between wireless carriers).

Respectfully submitted,

/s/Stephen B. Kinnaird

Carl W. Northrop
Michael Lazarus
Andrew Morentz
TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC
875 15th Street, NW, Suite 750
Washington, DC  20005
(202) 789-3120

Mark Stachiw
General Counsel, Secretary,
  and Vice Chairman

Stephen B. Kinnaird
*Counsel of Record*
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1842
stephenkinnaird@paulhastings.com

Attorneys for Appellants/Petitioners
METROPCS COMMUNICATIONS, INC.;
METROPCS 700 MHZ, LLC;

METROPCS COMMUNICATIONS, INC.
2250 Lakeside Boulevard
Richardson, TX 75082
Telephone: (214) 570-5800

METROPCS AWS, LLC;
METROPCS CALIFORNIA, LLC;
METROPCS FLORIDA, LLC;
METROPCS GEORGIA, LLC;
METROPCS MASSACHUSETTS, LLC;
METROPCS MICHIGAN, INC.;
METROPCS NETWORKS CALIFORNIA,
LLC;
METROPCS NETWORKS FLORIDA
LLC;
METROPCS TEXAS, LLC; AND
METROPCS WIRELESS, INC.

January 18, 2013

## CORPORATE DISCLOSURE STATEMENT

MetroPCS Communications, Inc. is a publicly traded company organized to provide wireless and data service to its customers. MetroPCS 700 MHz, LLC; MetroPCS AWS, LLC; MetroPCS California, LLC; MetroPCS Florida, LLC; MetroPCS Georgia, LLC; MetroPCS Massachusetts, LLC; MetroPCS Michigan, Inc.; MetroPCS Networks California, LLC; MetroPCS Networks Florida LLC; and MetroPCS Texas, LLC are wholly-owned subsidiaries of MetroPCS Wireless, Inc., which in turn is a wholly-owned direct subsidiary of MetroPCS, Inc., which in turn is a wholly-owned direct subsidiary of MetroPCS Communications, Inc. MetroPCS Communications, Inc. has no parent corporation, and only one publicly-traded company, BlackRock, Inc., through its subsidiary BlackRock Institutional Trust Company, N.A., owns more than 10 percent of its stock.

## STATEMENT REGARDING DEFERRED APPENDIX

The parties have conferred and will use a deferred joint appendix.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES............................................................................xvii

GLOSSARY ...........................................................................................xx

JURISDICTIONAL STATEMENT.................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

STATUTES AND REGULATIONS ................................................................2

INTRODUCTION....................................................................................2

STATEMENT OF THE CASE .....................................................................3

STATEMENT OF THE FACTS AND PROCEEDINGS BELOW .........................3

       A.     The Commission's Open-Access Order....................................3

       B.     Effect of Open-Access Order On MetroPCS ............................4

SUMMARY OF ARGUMENT.....................................................................6

STANDING............................................................................................8

ARGUMENT ..........................................................................................8

   I.     THE COMMISSION MAY ONLY REGULATE WIRELESS
        CARRIERS UNDER ITS ENUMERATED TITLE III
        POWERS ...................................................................................9

   II.    THE COMMISSION HAS NO SUBSTANTIVE POWER TO
        IMPOSE THE MOBILE OPEN-ACCESS RULES.........................14

   III.   THE COMMISSION'S TITLE III AUTHORITY TO GRANT,
        RENEW, AND MODIFY SPECTRUM LICENSES CANNOT
        SUSTAIN THE MOBILE OPEN-ACCESS RULES........................16

CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Library Ass'n v. FCC,*
  406 F.3d 689 (D.C. Cir. 2005).................................................................9

*Columbia Broadcasting System v. United States,*
  316 U.S. 407 (1942) ........................................................................11

*\*Comcast Corporation v. FCC,*
  600 F.3d 642 (D.C. Cir. 2010)........................................................9, 15

*Committee for Effective Cellular Rules v. F.C.C.,*
  53 F.3d 1309 (D.C. Cir. 1995)...........................................................18

*\*FCC v. Sanders Bros. Radio Station,*
  309 U.S. 470 (1940) ...................................................................13, 15

*\*Functional Music, Inc. v. FCC,*
  274 F.2d 543 (D.C. Cir. 1959).........................................................1, 16

*In the Matter Of Preserving The Open Internet,*
  25 F.C.C.R. 17905 (Dec. 21, 2010)......................................................3

*MD/DC/DE Broad. Ass'n v. FCC,*
  236 F.3d 13 (D.C. Cir. 2001), *reh'g denied,* 253 F.3d 732 (D.C. Cir.
  2001)...........................................................................................19

*\*Motion Picture Ass'n of America, Inc. v. F.C.C.,*
  309 F.3d 796 (D.C. Cir. 2002)........................................................2, 12

*National Broadcasting Co. v. United States,*
  319 U.S. 190 (1943) ..................................................................10, 11

*North Carolina v. EPA,*
  531 F.3d 896 (D.C. Cir. 2008)..........................................................19

*Authorities upon which we chiefly rely are marked with asterisks.

*Office of Communication of United Church of Christ v. FCC,*
   707 F.2d 1413 (D.C. Cir. 1983).................................................................11

*P & R Temmer v. F.C.C.,*
   743 F.2d 918 (D.C. Cir. 1984).................................................................17

*Red Lion Broadcasting Co. v. FCC,*
   395 U.S. 367 (1969).................................................................................11

*Regents v. Carroll,*
   338 U.S. 586 (1950).........................................................................9, 13, 17

*Stewart v. Nat'l Educ. Ass'n,*
   471 F.3d 169 (D.C. Cir. 2006)................................................................14

*United States v. Southwestern Cable Co.,*
   392 U.S. 157 (1968).................................................................................10

*WBEN Inc. v. United States,*
   396 F.2d 601 (2d Cir. 1968)...................................................................17

**STATUTES**

47 U.S.C.
   § 151 ....................................................................................................1, 12
   § 153(51) ..................................................................................................14
   § 303 ...........................................................................................6, 10, 11
   § 303(a)-(f) ...............................................................................................10
   § 303(f) .....................................................................................................15
   § 303(g) ................................................................................................7, 14
   § 303(h) ....................................................................................................15
   § 303(m) .....................................................................................................9
   § 303(o) ....................................................................................................10

§ 303(r) ................................................................. 6, 10, 12, 17
§ 303(v) ............................................................................. 15
§ 304 ............................................................................ 10, 16
§ 307 ................................................................................... 9
§ 307(a) ....................................................................... 10, 16
§ 307(b) ............................................................................ 15
§ 309 ........................................................................ 9, 10, 16
§ 315(a) ............................................................................ 11
§ 316 ...................................................................... 9, 17, 18
§ 316(a)(1) ................................................................. 10, 16
§ 332(a) ............................................................................ 13
§ 332(c)(2) ....................................................................... 14
§ 332(d)(1) ....................................................................... 13
§ 402(a) .............................................................................. 1
§ 402(b)(5) .......................................................................... 1
§ 548 ................................................................................ 15

Communications Act of 1934 .................... 2, 4, 8, 9, 11, 12, 14, 15, 16, 17

**OTHER AUTHORITIES**

47 C.F.R.

§ 8 .................................................................................. 3, 4
§ 8.1 ................................................................................... 3
§ 8.3 ................................................................................... 3
§ 8.5 .............................................................................. 7, 16
§ 8.5(b) ............................................................................... 3

*Amendment of Part 90 of the Commission's Rules to Create the Emergency Medical Radio Service,*
11 FCC Rcd 1708 (1996) ("*EMRS Order*") ................................... 18

*Appropriate Regulatory Treatment for Broadband Access To The Internet Over Wireless Networks,*
22 F.C.C.R. 5901 ¶¶ 19-28, 37-56 (2007) ............................... 13, 14

## GLOSSARY

| | |
|---|---|
| 4G | Fourth Generation |
| Act | Communications Act of 1934, as amended |
| CMRS | Commercial mobile radio service |
| Commission | Federal Communications Commission |
| FCC | Federal Communications Commission |
| Joint Brief | Joint Brief of Verizon and MetroPCS, *Verizon v. FCC*, No. 11-1355 (filed concurrently) |
| LTE | Long Term Evolution |
| MetroPCS | MetroPCS Communications, Inc. and its wireless affiliates (MetroPCS 700 MHz, LLC; MetroPCS AWS, LLC; MetroPCS California, LLC; MetroPCS Florida, LLC; MetroPCS Georgia, LLC; MetroPCS Massachusetts, LLC; MetroPCS Michigan, Inc.; MetroPCS Networks California, LLC; MetroPCS Networks Florida LLC; MetroPCS Texas, LLC; and MetroPCS Wireless, Inc.) |
| Mobile Internet Providers | Mobile wireless broadband Internet access providers |
| Mobile Internet Service | Mobile wireless broadband Internet access service |
| Mobile Open-Access Rules | 47 C.F.R. § 8.1, 8.3. 8.5(b) |
| Order | *In the Matter Of Preserving The Open Internet*, 25 F.C.C.R. 17905 (Dec. 21, 2010) |

## JURISDICTIONAL STATEMENT

Respondent the Federal Communications Commission ("FCC" or "Commission") issued its final order, *In the Matter Of Preserving The Open Internet*, 25 F.C.C.R. 17905 ("*Order*") (JA 1-194), on December 21, 2010, *see* 47 U.S.C. § 151, and published it in the Federal Register on September 23, 2011. MetroPCS Communications, Inc. and its FCC-licensed affiliates (collectively "MetroPCS") filed a timely appeal and petition for review on October 21, 2011. This Court has jurisdiction to review the *Order* under 47 U.S.C. § 402(b)(5) because MetroPCS holds licenses that the Commission declared modified in the *Order*, *see Functional Music, Inc. v. FCC*, 274 F.2d 543, 547-48 (D.C. Cir. 1959), or, alternatively, under 47 U.S.C. § 402(a) because MetroPCS timely filed a protective petition for review.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1) Whether the Commission has the unbounded authority to regulate mobile Internet access according to its conception of the public interest even when not exercising a delegated statutory power?

(2) Whether the Commission's licensing powers provide authority to promulgate mobile open-access rules as license conditions if those conditions are not based on any substantive statutory authority granted to the Commission?

- 1 -

## STATUTES AND REGULATIONS

Applicable statutes and regulations not contained in the addendum hereto appear in the Addendum of the Joint Brief of Verizon and MetroPCS, *Verizon v. FCC*, No. 11-1355 ("Joint Br.").

## INTRODUCTION

In imposing intrusive "open access" rules upon mobile broadband Internet access providers ("mobile Internet providers"), the Commission seeks to wield an unbounded power under Title III of the Communications Act of 1934 ("Act") to regulate such providers according to its conception of the public interest. The Commission misconceives the Title III scheme, which is one of enumerated powers, and mistakes the public-interest *standard* that Congress directed the Commission to apply in exercising its given powers as a *grant* of untrammeled authority. As this Court has held, "The FCC cannot act in the 'public interest' if the agency does not otherwise have the authority to promulgate the regulations at issue." *Motion Picture Ass'n of America, Inc. v. F.C.C.*, 309 F.3d 796, 806 (D.C. Cir. 2002). The Commission has no statutory authority that justifies the mobile open-access rules. Further, the Commission cannot impose license conditions if it lacks the statutory authority in the first instance to regulate. Accordingly, this Court must vacate the mobile open-access rules.

-2-

## STATEMENT OF THE CASE

This is a proceeding for judicial review of *In the Matter Of Preserving The Open Internet*, 25 F.C.C.R. 17905 (Dec. 21, 2010), which promulgated the challenged mobile open-access rules, 47 C.F.R. § 8.1, 8.3, & 8.5(b).

## STATEMENT OF THE FACTS AND PROCEEDINGS BELOW

### A.    The Commission's Open-Access Order

In the *Order*, the Commission prescribed open-access rules for both fixed and mobile broadband Internet access providers. *See* 47 C.F.R. Part 8. For mobile Internet providers like MetroPCS, the Commission imposed two requirements: transparency and a prohibition on blocking websites and certain applications. The transparency rule requires that a mobile Internet provider "publicly disclose accurate information regarding the network management practices, performance, and commercial terms of its broadband Internet access services sufficient for consumers to make informed choices regarding use of such services and for content, application, service, and device providers to develop, market, and maintain Internet offerings." *Id.* § 8.3. Under the "no-blocking" rule, the mobile Internet provider "shall not block consumers from accessing lawful websites, subject to reasonable network management; nor shall such person block

-3-

applications that compete with the provider's voice or video telephony services, subject to reasonable network management." *Id.* § 8.5.

The Commission invoked certain statutes as authority for both its mobile and fixed open-access rules. MetroPCS and Verizon have jointly challenged the FCC's authority under those statutes. Joint Br. at 27-37. But the Commission also justified its mobile open-access rules based on its separate Title III authority over spectrum licensees. Because MetroPCS and Verizon have taken divergent positions in another case involving the Commission's Title III authority, this Court granted MetroPCS this separate brief on Title III issues. *See* Briefing Order, *Verizon v. FCC*, No. 11-1355 (May 25, 2012); Joint Unopposed Mot. To Establish Briefing Format, No. 11-1355, at 5-6 (April 23, 2012).

### B.    Effect Of Open-Access Order On MetroPCS

MetroPCS provides mobile wireless voice and broadband Internet access service ("mobile Internet service") in selected U.S. metropolitan areas and serves more than 9.3 million subscribers, making it the fifth largest U.S. facilities-based mobile broadband wireless carrier. MetroPCS targets a mass market underserved by the larger national wireless carriers. MetroPCS' service plans, which require no long-term contract or credit check, currently begin at $25 per month for unlimited

nationwide voice and text service, and $40 per month for voice, text and data service, including all applicable taxes and regulatory fees.

While MetroPCS does not provide fixed broadband Internet service, its mobile service acts as a substantial competitive alternative to such services. A significant number of MetroPCS customers use their MetroPCS service to access the Internet. By offering affordable flat-rate service, MetroPCS serves a segment of the population which otherwise would be bypassed by the Internet revolution.

MetroPCS launched voice and text service in 2002 as a late entrant competing with established national wireless carriers that have greater resources, capital, customer bases, and spectrum. MetroPCS' competitive success results from its ability to innovate. Indeed, MetroPCS pioneered popular unlimited, flat-rate voice, text, and (later) data plans that have now been replicated in some form by each of the largest national carriers, and has been a disruptive and pro-competitive force in the wireless industry.

MetroPCS' competitiveness depends on having continued flexibility to innovate. However, the *Order*'s open-access rules undercut MetroPCS' ability to do so, to the detriment of consumers. In deploying the first-to-market fourth generation ("4G") long term evolution ("LTE") service in the United States, MetroPCS adopted a three-tiered pricing model, which enabled consumers to

-5-

choose their desired wireless data experience at an acceptable price.  Despite

bringing next-generation wireless data services to underserved populations,

MetroPCS became the target of complaints filed by certain advocacy groups under

*Order*'s mobile open-access rules.[1]  The complaints have pended before the FCC

for over 18 months.  These complaints, and the prospect of others, have had a

chilling effect on MetroPCS' innovation.   Holding the Commission to its

delegated authority is critical to promoting regulatory certainty, wireless

innovation, and MetroPCS' success.

## SUMMARY OF ARGUMENT

As this Court has declared, the Commission's broad latitude in exercising

delegated powers under the Communications Act does not equate to an

untrammeled power to regulate matters outside the Commission's statutory

authority.  The Commission's regulatory powers over radio are principally set forth

in section 303 of the Act, which expressly limits the Commission's power to

promulgate regulations or license conditions "necessary to carry out the provisions

of this chapter."  47 U.S.C. § 303(r).  Importantly, Congress did not grant the

---

[1] *See* Letter of Free Press to Chairman Genachowski (Jan. 10, 2011) (JA 1089-1094); Letter of Consumers Union and the Consumer Federation of America to Chairman Genachowski (Jan. 21, 2011) (JA 1095-1097).

Commission the express authority to regulate the provision of mobile Internet service; the Commission must find that authority elsewhere.

The Commission barely attempts to link its mobile open-access rules to any delegated statutory power. It claims these rules are rooted in its power under 47 U.S.C. § 303(g) to "[s]tudy new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest." But that provision relates to promotion of radio innovations, and does not grant unbridled authority to impose mandatory mobile open-access rules that regulate core business practices. The Commission also claims that the mobile open-access rules are ancillary to its authority to promote local television programming and diversity in multichannel video programming. However, the Commission never makes the requisite regulation-specific showing that such rules are reasonably necessary to its regulation of broadcasting and video programming. Indeed, the mobile no-blocking rule, which only applies to competing "voice or video *telephony* services," 47 C.F.R. § 8.5 (emphasis added),[2] cannot conceivably further the Commission's regulation of local broadcasting or video programming.

Equally untenable is the Commission's assertion of an unbounded authority to regulate radio in the public interest. The public interest is the *standard* the

---

[2] Video telephony refers to telephony services with a video link, such as Skype, not to video content services, such as Netflix.

Commission must use in exercising its given statutory authority, not a substitute for delegated statutory authority. If the Commission lacks authority in its organic statute to issue the regulation in question, it cannot do so whether or not the regulation is in the public interest.

Nor can the statutory provisions authorizing the Commission to grant, renew, and modify licenses in the public interest sustain the mobile open-access rules. *Valid* regulations become conditions of a license, but validity is measured by the Commission's substantive authority under its organic statute. Statutory provisions allowing the Commission to make individualized grants, renewals, and modifications of licenses do not constitute a roving charge to adopt sweeping industry-wide rules of general applicability that are not grounded in any enumerated Title III power. Consequently, the mobile open-access rules are *ultra vires*, and must be vacated.

## STANDING

MetroPCS has standing for the reasons stated in the Joint Brief at 13.

-8-

# ARGUMENT

## I.  THE COMMISSION MAY ONLY REGULATE WIRELESS CARRIERS UNDER ITS ENUMERATED TITLE III POWERS

In *Comcast Corporation v. FCC*, this Court declared that while "Congress gave the Commission broad and adaptable jurisdiction so that it can keep pace with rapidly evolving communications technologies" such as the Internet, "the allowance of wide latitude in the exercise of delegated powers is not the equivalent of untrammeled freedom to regulate activities over which the statute fails to confer ... Commission authority."  600 F.3d 642, 661 (D.C. Cir. 2010) (internal quotation marks and brackets omitted).  That same limit applies to the Commission's exercise of powers under Title III of the Act, and renders the mobile open-access rules invalid.  This question of delegated statutory authority is reviewed *de novo*. *Am. Library Ass'n v. FCC*, 406 F.3d 689, 699 (D.C. Cir. 2005).

The Title III scheme is one of enumerated powers.  *See Regents v. Carroll*, 338 U.S. 586, 597-98 (1950) ("As an administrative body, the Commission must find its powers within the compass of the authority given it by Congress.").  The Commission has the power to grant, suspend, modify, renew, or revoke licenses. 47 U.S.C. §§ 303(m), 307-09, 316.  Congress also vested the Commission with an array of specific regulatory powers, including the authority to classify radio stations, prescribe the nature of service to be rendered by particular stations or

-9-

classes of stations, assign frequencies, prevent interference among stations, and assign call letters to licensees. *See, e.g., id.* § 303(a)-(f), (o).

Critically, Congress has given the Commission power to issue regulations and impose license conditions, but only in furtherance of an enumerated statutory power: *i.e.*, the Commission may "[m]ake such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, *as may be necessary to carry out the provisions of this chapter.*" *Id.* § 303(r) (emphasis added); *see United States v. Southwestern Cable Co.*, 392 U.S. 157, 174-77 (1968) (upholding rules under section 303(r) requiring cable operators to transmit local broadcasting channels that were properly tied to the Commission's statutory powers over broadcasting).

To be sure, Congress instructed the Commission to promote "the public interest, convenience, or necessity" both in its licensing functions and in exercising its regulatory powers under section 303. *Id.* §§ 303, 307(a), 309, & 316(a)(1). But, as the Supreme Court has stated, the "public interest, convenience, or necessity" states the "standard" the Commission applies in performing its enumerated functions. *National Broadcasting Co. v. United States*, 319 U.S. 190, 227 (1943). *See also id.* at 215 ("The criterion *governing the exercise* of the Commission's licensing power is the 'public interest, convenience, or necessity.'").

-10-

Thus, the "essence" of Congress's approach in Title III is "to define broad areas for regulation *and* to establish standards for judgment adequately related in their application to the problems to be solved." *Id.* at 219-220 (emphasis added). Section 303 and other substantive grants in Title III constitute "the broad areas for regulation," and the "public interest" defines the standard by which these enumerated powers are to be exercised. Regardless of whether regulation is in the public interest, the Commission cannot regulate in an area without statutory authority. *See Columbia Broadcasting System v. United States*, 316 U.S. 407, 416-17 (1942) (the Commission lacks the power to regulate the third-party contracts of licensees with networks in the absence of specific authorization to regulate chain broadcasting).

While the courts have upheld a duty of broadcasters to operate in the public interest, *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380 (1969); *Office of Communication of United Church of Christ v. FCC,* 707 F.2d 1413, 1427-30 (D.C. Cir. 1983), which the Act expressly recognizes for broadcasters, 47 U.S.C. § 315(a) ("Nothing in the foregoing shall be construed as relieving broadcasters, in connection with the presentation of newscasts, news interviews, news documentaries, and on-the-spot coverage of news events, from the obligation imposed upon them under this chapter to operate in the public interest ...."), this

-11-

Court has clarified that the Act does not give the Commission a boundless charge to regulate radio services according to its latest perception of the "public interest." *Motion Picture Ass'n of America, Inc. v. F.C.C.*, 309 F.3d 796 (D.C. Cir. 2002) ("*MPAA*"). In *MPAA*, the FCC had imposed video description requirements upon both broadcasters and multichannel video programming distributors (*e.g.*, cable and satellite companies). This Court held that the Commission lacked express statutory authority to impose these requirements, and could not rely on its general powers over radio and wire communication under section 1 (47 U.S.C. § 151) or over radio broadcasting under section 303(r) to regulate program content. *Id.* at 803-06. Regarding the latter, the Court held that

> [t]he FCC cannot act in the "public interest" if the agency does not otherwise have the authority to promulgate the regulations at issue. An action in the public interest is not necessarily taken to "carry out the provisions of the Act," nor is it necessarily authorized by the Act. The FCC must act pursuant to delegated authority before any "public interest" inquiry is made under § 303(r).

*Id.* at 806.

The Title III scheme also reflects the judgment of Congress that radio services are best provided on a competitive basis free of the intrusive government regulation typically applied to common carriers. As the Supreme Court has recognized, by designing a system of spectrum licensing, Congress chose to

promote the development of radio principally through "free competition" among

licensees:

> [T]he Act recognizes that broadcasters are not common
> carriers, and are not to be dealt with as such. Thus, the
> Act recognizes that the field of broadcasting is *one of
> free competition*. The sections dealing with broadcasting
> demonstrate that Congress has not, in its regulatory
> scheme, abandoned the principle of free competition....

*FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 474 (1940) (emphasis added

and footnotes omitted).  Accordingly, while the Commission may issue licenses

based on which applicant may "render the best practicable service to the

community," "*[t]he Commission is given no supervisory control of the programs,

of business management, or of policy*." *Id.* at 475 (emphasis added); *Regents*, 338

U.S. at 598 ("the licensee's business as such is not regulated").

Congress has relied upon competition, rather than intrusive regulation, to

promote the emergence of new radio technologies beyond traditional broadcasting.

With the advent of wireless telephony, Congress authorized the Commission to

engage in limited common-carrier regulation of only one type of radio service:

namely, "commercial mobile radio service." 47 U.S.C. § 332(a), (d)(1).  But

Congress has expressly exempted other services from common-carrier regulation.

Indeed, the Commission has rightly declared mobile Internet service to be <u>both</u> an

information service and a private mobile service, *see Appropriate Regulatory*

-13-

*Treatment for Broadband Access To The Internet Over Wireless Networks*, 22 F.C.C.R. 5901 ¶¶ 19-28, 37-56 (2007), both of which are protected by statute from common-carrier regulation.  47 U.S.C. §§ 153(51), 332(c)(2).  Thus, the Commission may only regulate mobile Internet service by exercising delegated powers, or by promulgating regulations necessary to the exercise of such powers.

## II.    THE COMMISSION HAS NO SUBSTANTIVE POWER TO IMPOSE THE MOBILE OPEN-ACCESS RULES.

Notwithstanding these requirements, the *Order* is tellingly devoid of analysis of any Title III substantive authority that would support the mobile open-access rules.  The few passing provisions of the Act in the *Order* do not justify the rules in question.

First, the Commission, Order ¶ 127 (JA 70), invokes its power to "[s]tudy new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest."  47 U.S.C. § 303(g).  But the authority to "generally encourage" more effective use of radio does not encompass the imposition of sweeping mandatory regulations that intrude upon the licensee's competitive business practices; it entails instead the general power to promote and incentivize radio innovations, as is clear from the companion terms that empower the Commission to study new uses and provide for experimentation in frequency usage.  See *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d

-14-

169, 175 (D.C. Cir. 2006) ("*[N]oscitur a sociis* teaches that a word is known by the company it keeps."). The Commission's contrary reading would swallow Title III's scheme of enumerated powers and do away with its fundamental approach of relying upon "free competition" among licensees to promote the Act's objectives, *Sanders*, 309 U.S. at 474. Moreover, the mobile open-access rules are a limitation *on* mobile providers and thus a *dis*couragement to provide effective radio service.

Next, the Commission appears to rely upon its ancillary authority to promote "orderly development of an appropriate system of local television broadcasting," and "to oversee MVPD [(multichannel video programming distributor)] services, including direct-broadcast satellite (DBS)." *Order* ¶ 127 & 128 & nn. 398-408 (JA 70-71). But the Commission never made the required connection that the mobile open-access rules are reasonably necessary to performing those (or other Title III) functions. *See Comcast*, 600 F.3d at 646, 654. The Commission also merely sprinkles citations to various provisions – 47 U.S.C. §§ 303(f) & (h) (concerning prevention of radio interference), 303(v) (concerning regulation of direct-to-home satellite services); 307(b) (concerning equitable distribution of station licenses in the several States), 548 (concerning diversity and competition in video programming distribution) – in the above-mentioned footnotes of its order, but never shows how the mobile open-access rules are necessary to regulate those

matters. Indeed, the no-blocking rule that applies to websites and competitive "voice or video *telephony*" applications, 47 C.F.R. § 8.5 (emphasis added), has no conceivable nexus to television or satellite broadcasting or MVPD services.

## III. THE COMMISSION'S TITLE III AUTHORITY TO GRANT, RENEW, AND MODIFY SPECTRUM LICENSES CANNOT SUSTAIN THE MOBILE OPEN-ACCESS RULES.

The Commission next attempts to defend the mobile open-access rules based upon its power to grant licenses "subject to conditions the Commission imposes on that use," turning the statutory scheme on its head by claiming that its authority to impose conditions is limited only by the public-interest standard and does not require delegated statutory authority. *Order* ¶ 133 & nn. 422-35 (JA 74-75) (citing *inter alia* 47 U.S.C. §§ 304, 307(a), 309, & 316(a)(1)). None of the cited licensing provisions supports this proposition.

First, the Commission misconceives the impact of generally applicable rules and regulations on licenses. A carrier granted a new or renewed license "takes his license subject to all *valid* outstanding rules and regulations," *Functional Music, Inc. v. F.C.C.*, 274 F.2d 543, 547 (D.C. Cir. 1959) (emphasis added), and the validity of the regulations is measured against the Commission's organic statute. *See id.* at 548. Similarly, an existing license is deemed modified by a generally applicable regulation only if the rule is valid. *Id.* at 547. Because the Commission

-16-

has not identified any valid Title III basis for the mobile open-access rules, they

cannot be deemed terms or conditions of a license.

Second, the statutory subsection that governs license conditions forecloses

the Commission's position.  Although an "FCC licensee takes its license subject to

the conditions imposed on its use," and these "conditions may be contained in both

the Commission's regulations and in the license," *P & R Temmer v. F.C.C.*, 743

F.2d 918, 928 (D.C. Cir. 1984), the Commission's power to condition licenses

derives exclusively from section 303(r).  *Regents*, 338 U.S. at 600.  As noted

above, license conditions may only be imposed "as may be necessary to carry out

the provisions of this chapter."  47 U.S.C. § 303(r).  The Commission's inability to

anchor the mobile open-access rules in its substantive grants of authority renders

those rules invalid license conditions.

Third, the mobile open-access rules cannot be independently defended as

modifications of a license under section 316.  The Commission contends that it

may exercise its section 316 authority "on a license-by-license basis or through a

rulemaking."  *Order* ¶ 133 (JA 74-75) (citing *WBEN Inc. v. United States*, 396

F.2d 601 (2d Cir. 1968)).  However, *WBEN* stands only for the limited proposition

that, when licenses are "modified" by general rulemaking, a licensee is not entitled

to a separate section 316 hearing.  *Id.* at 618.  *WBEN* does not hold that every

rulemaking applicable to existing licensees is an exercise of the Commission's

section 316 power, or that section 316 authorizes the Commission to impose rules

for which it otherwise lacks delegated authority.  Valid regulations modify licenses

by the force of the Commission's exercise of lawful delegated powers; they have

nothing to do with the public-interest standards or procedures of section 316,

which address individualized licensing determinations.  *Committee for Effective*

*Cellular Rules v. F.C.C.*, 53 F.3d 1309, 1320 (D.C. Cir. 1995) (provisions that

"govern a licensee's request for modification of a particular license … do not

deprive the Commission of its authority to pursue a rulemaking necessary for the

orderly conduct of its business") (internal quotation marks omitted).

Furthermore, the Commission has held that "[u]nder § 316, a license is not

considered modified when the Commission – acting by rule making – affects the

rights of all licensees of a particular class." *Amendment of Part 90 of the*

*Commission's Rules to Create the Emergency Medical Radio Service*, 11 FCC Rcd

1708, ¶ 11 (1996) ("*EMRS Order*").  Here, the mobile open-access rules apply to

"all licensees of a particular class": namely, "all mobile broadband providers."

*Order* ¶ 135 (JA 75-76).  Therefore, under its own precedent, the *Order* could not

have lawfully "modified" existing licenses under section 316.  Additionally, the

Commission made no determination that these rules should apply to existing

-18-

licensees even if they could not apply to new or renewed licensees (which would irrationally skew wireless broadband competition).

Finally, even if *arguendo* the Commission's licensing powers justify the mobile open-access rules at issue, those rules should be vacated if the Court invalidates the fixed broadband open-access rules. The Commission expressly determined that there should be less stringent open-access rules on mobile Internet providers than on fixed providers. *Order* ¶¶ 8, 94 (JA 8, 52-53). Leaving the mobile open-access rules in place while striking down the fixed broadband rules clearly would violate the Commission's expressed intention to subject mobile Internet providers to a lighter regulatory touch, and "[s]everance and affirmance of a portion of an administrative regulation is improper if there is substantial doubt that the agency would have adopted the severed portion on its own." *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (internal quotation marks omitted). Because there is no indication that the Commission would have imposed open-access rules solely on mobile Internet providers, the rules should be vacated in their entirety. *See MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001), *reh'g denied*, 253 F.3d 732, 734 (D.C. Cir. 2001).

-19-

## **CONCLUSION**

For the reasons stated above, this Court should vacate the *Order* and the

mobile open-access rules.

Respectfully submitted,

/s/ Stephen B. Kinnaird

Carl W. Northrop
Michael Lazarus
Andrew Morentz
TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC
875 15th Street, NW, Suite 750
Washington, DC  20005
(202) 789-3120

Mark Stachiw
General Counsel, Secretary and
  Vice Chairman
METROPCS COMMUNICATIONS, INC.
2250 Lakeside Boulevard
Richardson, TX 75082
Telephone: (214) 570-5800

Stephen B. Kinnaird
  *Counsel of Record*
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1842
stephenkinnaird@paulhastings.com

Attorneys for Appellants/Petitioners,
METROPCS COMMUNICATIONS, INC.;
METROPCS 700 MHZ, LLC;
METROPCS AWS, LLC;
METROPCS CALIFORNIA, LLC;
METROPCS FLORIDA, LLC;
METROPCS GEORGIA, LLC;
METROPCS MASSACHUSETTS, LLC;
METROPCS MICHIGAN, INC.;
METROPCS NETWORKS CALIFORNIA,
LLC;
METROPCS NETWORKS FLORIDA
LLC;
METROPCS TEXAS, LLC; AND
METROPCS WIRELESS, INC.

January 18, 2013

-20-

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the text of the foregoing Initial Brief of Petitioners contains no more than 3,980 words, as reported by the word processing system on which it was prepared, including footnotes and citations, and excluding the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules or regulations, and any certificates of counsel, in compliance with FRAP Rule 32(a).

Respectfully submitted,

/s/ Stephen B. Kinnaird

Carl W. Northrop
Michael Lazarus
Andrew Morentz
TELECOMMUNICATIONS LAW
PROFESSIONALS PLLC
875 15th Street, NW, Suite 750
Washington, DC  20005
(202) 789-3120


Mark Stachiw
General Counsel, Secretary,
  and Vice Chairman
METROPCS COMMUNICATIONS, INC.
2250 Lakeside Boulevard
Richardson, TX 75082
Telephone: (214) 570-5800

Stephen B. Kinnaird
    *Counsel of Record*
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1842
stephenkinnaird@paulhastings.com

Attorneys for Appellants/Petitioners
METROPCS COMMUNICATIONS, INC.;
METROPCS 700 MHZ, LLC;
METROPCS AWS, LLC;
METROPCS CALIFORNIA, LLC;
METROPCS FLORIDA, LLC;
METROPCS GEORGIA, LLC;
METROPCS MASSACHUSETTS, LLC;
METROPCS MICHIGAN, INC.;
METROPCS NETWORKS CALIFORNIA,
LLC;
METROPCS NETWORKS FLORIDA
LLC;
METROPCS TEXAS, LLC; AND
METROPCS WIRELESS, INC.

January 18, 2013

-22-

## CERTIFICATE OF SERVICE

Pursuant to Rules 25(b) and (d) and 31 of the Federal Rules of Appellate Procedure, I hereby certify that I have this electronically filed the foregoing document "Reply Brief Of Appellants/Petitioners MetroPCS Communications, Inc. Et Al.." with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system.  I further certify that nine copies of the foregoing will be filed by hand with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit within two business days.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I certify further that I have directed that copies of the foregoing document be mailed by U.S. First-Class Mail to any persons who are not registered as CM/ECF users, unless another attorney representing the same party is receiving electronic service.

| | |
|---|---|
| Peter Karanjia<br>Jacob M. Lewis<br>Joel Marcus<br>Federal Communications Commission<br>Office of the General Counsel<br>445 12th Street, SW<br>Washington, DC 20554<br><br>*Counsel for the Federal*<br>*Communications Commission* | Catherine G. O'Sullivan<br>Robert J. Wiggers<br>Nickolai G. Levin<br>U.S. Department of Justice<br>(DOJ) Antitrust Division, Appellate<br>Section<br>Room 3224<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>*Counsel for United States of America* |

| | |
|---|---|
| James B. Ramsay<br>National Association of Regulatory<br>Utility Commissioners<br>1101 Vermont Avenue, N.W.<br>Suite 200<br>Washington, DC 20005<br><br>*Counsel for National Association of*<br>*Regulatory Utility Commissioners* | Genevieve Morelli<br>Independent Telephone &<br>Telecommunications Alliance<br>1101 Vermont Avenue, NW<br>Suite 501<br>Washington, DC 20005<br><br>*Counsel for Independent Telephone &*<br>*Telecommunications Alliance* |
| Harold J. Feld<br>Public Knowledge<br>1818 N Street, N.W.<br>Suite 410<br>Washington, DC 20036<br><br>*Counsel for Public Knowledge* | Henry Goldberg<br>Goldberg, Godles, Wiener & Wright<br>1229 19th Street, NW<br>Washington, DC 20036-2413<br><br>*Counsel for Open Internet Coalition* |
| David Bergmann<br>National Association Of State Utility<br>Consumer Advocates<br>3293 Noreen Drive<br>Columbus, OH 43215<br><br>*Counsel for National Association of*<br>*State Utility Consumer Advocates* | Brendan Daniel Kasper<br>Kurt Matthew Rogers<br>Vonage Holdings Corp.<br>23 Main Street<br>Homdel, NJ 07333<br><br>*Counsel for Vonage Holdings*<br>*Corporation* |
| E. Joshua Rosenkranz<br>Orrick, Herrington & Sutcliffe, LLP<br>51 West 52nd Street<br>New York, NY 10019-6142<br>TEL: (212) 506-5000<br><br>*Counsel for Venture Capital Investors* | Andrew Jay Schwartzman<br>2000 Pennsylvania Avenue, NW<br>Suite 4300<br>Washington, DC 20006<br>TEL: (202) 232-4300<br><br>*Counsel for Tim Wu* |
| Jeffrey J. Binder<br>Law Office of Jeffrey Binder<br>2510 Virginia Avenue, NW<br>Suite 1107<br>Washington, DC 20037<br><br>*Counsel for Vonage Holdings*<br>*Corporation* | Wesley G. Russell, Jr.<br>Office of the Attorney General<br>Commonwealth of Virginia<br>900 East Main Street<br>Richmond, VA 23219<br><br>*Counsel for the Commonwealth of*<br>*Virginia* |

| | |
|---|---|
| Ilya Shapiro<br>Cato Institute<br>1000 Massachusetts Ave., NW<br>Washington, DC 20036<br><br>*Counsel for Cato Institute* | John P. Elwood<br>Eric A. White<br>Vinson & Elkins LLP<br>2200 Pennsylvania Avenue, NW<br>Suite 500 West<br>Washington, DC 20037<br><br>*Counsel for TechFreedom, The Competitive Enterprise Institute, The Free State Foundation, and The Cato Institute* |
| Russell P. Hanser<br>Bryan N. Tramont<br>Wilkinson Barker Knauer, LLP<br>2300 N Street, N.W.<br>Suite 700<br>Washington, DC 20037<br><br>*Counsel for the National Association of Manufacturers* | David T. Goldberg<br>Donahue & Goldberg, LLP<br>99 Hudson Street, 8th Floor<br>New York, New York 10013<br>TEL: (212) 334-8813<br><br>*Counsel for Reed Hundt, Tyrone Brown, Michael Copps, Nicholas Johnson, Susan Crawford and The National Association of Telecommunications Officers and Advisors* |
| Randolph May<br>Free State Foundation<br>P.O. Box 60680<br>Potomac, MD 20859<br><br>*Counsel for Free State Foundation* | John Blevins<br>Loyola University New Orleans<br>College of Law<br>7214 St. Charles Ave., Box 901<br>New Orleans, LA 70118<br>TEL: (504) 861-5853<br><br>*Counsel for Internet Engineers And Technologists* |
| Quentin Riegel<br>National Association of Manufacturers<br>733 10th Street, N.W.<br>Suite 700<br>Washington, DC 20001<br><br>*Counsel for the National Association of Manufacturers* | Sam Kazman<br>Competitive Enterprise Institute<br>1899 L St., NW, Floor 12<br>Washington, D.C., 20036<br><br>*Counsel for Competitive Enterprise Institute* |

Kevin S. Bankston
Emma J. Llansó
Center For Democracy & Technology
1634 I Street, NW,Suite 1100
Washington, DC 20006
Tel: (202) 637-9800

*Counsel for the Center For Democracy
& Technology And Legal Scholars*

Respectfully submitted,


/s/ Stephen B. Kinnaird

Carl W. Northrop                          Stephen B. Kinnaird
Michael Lazarus                              *Counsel of Record*
Andrew Morentz                            PAUL HASTINGS LLP
TELECOMMUNICATIONS LAW              875 15th Street, N.W.
PROFESSIONALS PLLC                     Washington, DC  20005
875 15th Street, NW, Suite 750           (202) 551-1842
Washington, DC  20005                     stephenkinnaird@paulhastings.com
(202) 789-3120
                                                    Attorneys for Appellants/Petitioners
                                                    METROPCS COMMUNICATIONS, INC.;
                                                    METROPCS 700 MHZ, LLC;
Mark A. Stachiw                            METROPCS AWS, LLC;
General Counsel, Secretary,               METROPCS CALIFORNIA, LLC;
  and Vice Chairman                       METROPCS FLORIDA, LLC;
METROPCS COMMUNICATIONS, INC.       METROPCS GEORGIA, LLC;
2250 Lakeside Boulevard                   METROPCS MASSACHUSETTS, LLC;
Richardson, TX 75082                      METROPCS MICHIGAN, INC.;
Telephone: (214) 570-5800                METROPCS NETWORKS CALIFORNIA,
                                                    LLC;
                                                    METROPCS NETWORKS FLORIDA,
                                                    LLC;
                                                    METROPCS TEXAS, LLC; AND
                                                    METROPCS WIRELESS, INC.



January 18, 2013

-27-